The judgment of the United States Customs Court is *affirmed.*

GARRETT, Judge, dissents.

UNITED STATES *v.* UNIVERSITY OF CHICAGO PRESS (No. 3863)[1]

[1] T. D. 47685.

United States Court of Customs and Patent Appeals, April 29, 1935.

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General), for the United States.
*James R. Ryan* for appellee.

[Oral argument April 15, 1935, by Mr. Jackson and Mr. Ryan]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Sixty copies of a book known as "Medinet-Habu" were entered at the port of Chicago for consumption, under the Tariff Act of 1930. The merchandise was classified by the collector at the port as books of American authorship, under paragraph 1410 of said act. The examiner afterward testified in the case, and stated that the return for classification was made under the provision of said paragraph 1410, "all other, not specially provided for." It is stipulated in the case that the books are bound, but not in leather.

The importer protested, claiming that the imported merchandise was free of duty under paragraph 1630 of said act, as books printed wholly or chiefly in languages other than English. The contesting provisions of the act are as follows:

PAR. 1410. * * * bound books of all kinds except those bound wholly or in part in leather, sheets or printed pages of books bound wholly or in part in leather, pamphlets, music in books or sheets, and printed matter, all the foregoing not specially provided for, if of bona fide foreign authorship, 15 per centum ad valorem; all other, not specially provided for, 25 per centum ad valorem: * * *.

PAR. 1630. Books and pamphlets printed wholly or chiefly in languages other than English; * * *.

On the hearing in the trial court, the examiner testified that these books were composed of a number of "photographic illustrations with inscriptions," and, in his opinion, "did not come under any special provision for books."

The importer also called John A. Wilson, a professor in the University of Chicago, a teacher of history and languages, who testified he was conversant with the ancient Egyptian language of from 3000 B. C. to 500 A. D. He further stated that this language was a dead language, was written in the form of hieroglyphics, and that he could read the same. This witness stated that he had examined one of the imported books, and had compared the number of words appearing upon the various pages in hieroglyphics with the number of English words used, and that the Egyptian words predominated in number. A copy of the imported books was introduced in evidence as Exhibit 1, and it was testified by this witness that, aside from the English

text, Exhibit 1 was composed of two types of plates, one being a photographic plate and the other a plate which has a line drawing. According to this witness, the one class of plate is a reproduction directly from the photograph, while in the other type of plate the photographic base is faded out, leaving only a line drawing of what was originally the photographic print.

After the line drawings were made, they were submitted to the printer and the printer made collotypes, which appear in the book. All the plates appearing in the book were made from photographic prints which were variously treated to produce the plates, reproductions of which ultimately appeared in the volumes. It seems, however, fairly deducible from the testimony, that the pages of this book were not sensitized, and that the reproductions thereon were not made by photography, but by printing processes from plates. This witness was of the opinion that the imported merchandise "had been printed." No further testimony was heard.

Upon this testimony the majority of the trial court sustained the protest, being moved to this conclusion largely by a consideration of the testimony of the witness Wilson, especially as to that portion of his testimony to the effect that the books were printed chiefly in a language other than English.

Judge Dallinger dissented from the decision of the majority, and based such dissent upon his view that the imported articles were, as it appeared from the sample admitted in evidence, printed chiefly in English. In coming to this conclusion, the dissenting judge was of opinion that, aside from the descriptive matter appearing in these volumes, each volume constituted but a collection of printed reproductions of photographs of Egyptian temples and parts thereof. His view may be summed up in this expression:

In other words, I am of the opinion that when the Congress used the words "printed wholly or chiefly in languages other than English" it had in mind only the text of the book and not words that may appear upon pictures or illustrations.

In the present volume it will be noted that there are some pictures which contain no hieroglyphics. Moreover, there is no proof that the heiroglyphics on the illustrations tell a connected story or narrative.

We are of the opinion that the view taken in the dissenting opinion is the correct one in this case. Whether these volumes are books printed chiefly in the English language is best shown by a consideration of the books themselves. As we have several times said, samples are potent witnesses. *United States* v. *Halle Bros. Co.*, 20 C. C. P. A. (Customs) 219, T. D. 45995, and authorities cited.

We have examined the sample before us and find that it is a book, in size about 18 by 26 inches and 1½ inches thick. The title pages indicate that the book is termed "Medinet-Habu—Vol. II, Later Historical Records of Ramses III." Five preliminary pages state various matters relative to the subject matter involved in the publica-

tion, while four other pages are also devoted to a "list of plates." All of this printed matter is in English. Every plate contained in the book is numbered, and explanatory matter appears in company with each one of the same, all in English. In fact, there are no words appearing in the volume, aside from those pictured upon the plates themselves, other than in the English language. The plates appearing upon the various pages give reproductions, some in color, some in line drawings, of various portions of Egyptian temples. In every case it is shown by the explanatory text that the plates are reproductions of some portion of an Egyptian building, or temple.

We are convinced that these books are not books printed wholly or chiefly in languages other than English. As has been properly said in the dissent, they are books which consist of reproductions of photographs of places and things, and although the words represented by hieroglyphs which appear upon the various objects portrayed may exceed the number of English words used in the descriptive matter, this, in itself, does not constitute a book printed wholly or chiefly in languages other than English. It has properly been suggested that if a collection in book form was made of photographic plates of monuments upon which inscriptions in foreign languages appeared, and it was found, on inspection, that the number of words as they appeared upon the reproductions of these photographs exceeded the number of exclusively English words used in the text, we would have an analogous case, and it hardly appears probable that in any such case it would be contended that such book was printed, in any part, of other than the English language.

There is but little authority on this subject. The only pertinent case which has been cited is *Weber & Co.* v. *United States*, T. D. 13343, which arose under the tariff act of October 1, 1890. Paragraph 513 of the free list of that act, under which the importer was claiming, was in substantially the same language as that found in paragraph 1630, here involved. In the case cited, the Board of General Appraisers held that a book of lithographic prints, being a bound volume of decorative designs without any letter press whatever, a portfolio containing one title sheet and fourteen lithographic plates, mounted on cardboard, with title and appropriate text beneath the pictures, a portfolio with double sheet, containing title page and index of plates, and 138 sheets of photographic reproductions of decorative designs, and other similar works, were "not books printed in language", and were not exempt from duty under said paragraph 513.

A case which is somewhat helpful here is *Petry Co.* v. *United States*, 5 Ct. Cust. Appls. 524, T. D. 35174. In that case, unbound photomechanic reproductions of paintings, having descriptive titles in German, French, and English, were imported and claimed to be free of duty under paragraph 518 of the tariff act of August 5, 1909,

which provided for "books and pamphlets printed chiefly in languages other than English." The court disposed of the matter on the issue that the books were not complete. However, in discussing the reproductions of paintings, it was said:

In so far as the pictures can be regarded as printing, it cannot be said that they are printed in a foreign language.

It is our opinion that the judgment of the United States Customs Court should be, and it is hereby, *reversed*.